UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM R. UNDERWOOD,        :     CIVIL NO. **3:04-CV-1624**
                       :
        Plaintiff      :    (Judge Caputo)
                       :
     v.             :    (Magistrate Judge Smyser)
                       :
JAKE MENDEZ, *Warden,*     :
*USP Allenwood;*           :
RICHARD MATLACK, *Case*   :
*Manager, Honor Dorm;*    :
and R. L. WOLEVER,       :
                       :
        Defendants   :

## REPORT AND RECOMMENDATION

The plaintiff, William R. Underwood, a federal prisoner, filed a civil rights complaint in the United States District Court for the District of Columbia against Jake Mendez, Richard Matlack and R.L. Wolever on January 27, 2003. An amended complaint was filed on February 25, 2003.

Defendant Jake Mendez is the Warden of the United States Penitentiary at Allenwood. Defendant Richard Matlack is a case manager at U.S.P. Allenwood and defendant R.L. Wolever is a Unit Manager at U.S.P. Allenwood. By Order of June 24, 2004, the United States District Court for the

District of Columbia dismissed the claims of the plaintiff as to the defendants in their official capacities and transferred this case to this court.

With leave of court, Order of December 14, 2004 (Doc. 11), the plaintiff filed a second amended complaint (Doc. 6).  The defendants on June 26, 2005 filed a motion to dismiss or for summary judgment as to the second amended complaint (Doc. 28).  Exhibits (Doc. 29) and a statement of material facts (Doc. 31) were filed.  A brief in opposition was filed on July 27, 2005 (Doc. 32), and no reply brief was filed.

The second amended complaint alleges that the plaintiff was transferred from U.S.P. Allenwood to U.S.P. Lee, another United States penitentiary, as the result of a decision on the part of the defendants to include the plaintiff among prisoners transferred from U.S.P. Allenwood under the guise of decreasing the size of the population at U.S.P. Allenwood. The complaint alleges that the defendants' decision to transfer the plaintiff was the result of the defendants' belief that the plaintiff did too much legal work.   The plaintiff was involved at the time of his transfer in

2

litigation in the Southern District of New York before Judge
Baer that demanded of him that he participate in telephone
calls and conferences, that he send extensive letters and use
a lot of postage, that he have documents notarized, that he
take depositions in the U.S.P. Allenwood visiting room and
that he pick up and deliver numerous boxes by way of Federal
Express.  He was told by defendant Matlock that the
litigation was taking up too much of his time and that co-
workers of Mr. Matlack wanted to see him "be gotten rid of."

     The plaintiff claims that the defendants know that the
plaintiff had non-frivolous legal claims and imminent court
deadlines and that they transferred him to U.S.P. Lee in
retaliation against him for addressing his non-frivolous
claims.  He alleges that Judge Baer was wrongly told by the
defendants that the plaintiff was transferred to help to fill
up a new prison.  He alleges that a progress report was
falsified.  He alleges that the defendants discriminated
against him on racial grounds and retaliated against him in
transferring him.

     The defendants argue that this complaint should be
dismissed as to the plaintiff's claim that the defendants

3

falsified a progress report on the basis of a failure to exhaust administrative remedies.  They argue also that the defendants are entitled to qualified immunity as to the wrongful, retaliatory transfer claim.  Defendant Mendez argues that the claims against him should be dismissed for lack of an allegation of personal involvement on his part in any alleged wrongful conduct.  For the following reasons, it will be recommended that the motion be denied in part and granted in part.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff.  *Pennsylvania House, Inc. v.*

4

*Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However,
"conclusory allegations of law, unsupported conclusions and
unwarranted inferences need not be accepted as true." *Id*. at
449-50.  A complaint should not be dismissed for failure to
state a claim upon which relief can be granted unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief. *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom
v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

Fed.R.Civ.P. 12(b) provides, in part:

> If, on a motion asserting the defense
> numbered (6) to dismiss for failure of the
> pleading to state a claim upon which relief can
> be granted, matters outside the pleadings are
> presented to and not excluded by the court, the
> motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56,
> and all parties shall be given a reasonable
> opportunity to present all material made
> pertinent to such a motion by Rule 56.

Defendants have submitted documents outside the
pleadings in support of their motion to dismiss.  Pursuant to
Fed.R.Civ.P. 12(b) we will treat the motion to the extent

5

that it is warranted to do so as a motion for summary
judgment.

"'Summary judgment is proper if there is no genuine
issue of material fact and if, viewing the facts in the light
most favorable to the non-moving party, the moving party is
entitled to judgment as a matter of law.'" *The Circle School
v. Pappert*,   381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi
Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d
435, 441 n.3 (3d Cir. 2000)).

This is an action brought under *Bivens v. Six Unknown
Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388
(1971).

The defendants ask the court to grant summary judgment
in favor of the defendants as to the plaintiff's conspiracy
and false progress reports claims on the grounds that the
plaintiff did not exhaust administrative remedies.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect to
prison conditions under section 1983 of this

6

> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility until such administrative
> remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 122 S.Ct. 983, 992 (2002).  A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking.  *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.  Failure to exhaust available administrative remedies is an affirmative defense.  *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).

The plaintiff did exhaust administrative remedies on his claims of an unlawful transfer on the basis of racial

7

discrimination and on the basis of unlawful retaliation for the exercise of the right of access to the courts.

The defendants provide no justification for their assertion that a claim of conspiracy had to be independently stated and administratively exhausted.  They do not justify the assertion that the claim of a falsification of a progress report, a claim that is made in conjunction with a claim of a retaliatory transfer, should be independently stated and exhausted.  The Declaration of Susan Albert, Paralegal Specialist, asserts that "Underwood exhausted the issue of the racially motivated and retaliatory transfer; however, he failed to exhaust on the issue of falsifying progress reports and conspiracy."  No. 11, p.3, Doc.29.  The plaintiff's allegations of conspiracy and of falsified progress reports are so integrally related to his claim of a wrongful transfer arising from unlawful discrimination and retaliatory motives that the necessity of separate exhaustion would require far more explanation than the defendants have given it.  This basis for summary judgment or dismissal is without merit.

The defendants argue that the defendants are entitled to qualified immunity because, they assert, none of the

plaintiff's claims rise to the level of constitutional violations.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  Id. at 818-19.

In *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Supreme Court explained that to be clearly established the contours of the right must be sufficiently clear that a reasonable official would understand that his actions violate that right.  The inquiry into reasonableness should be examined in light of clearly established law and the information the official possesses.  The defendant's subjective beliefs are irrelevant.  Id. at 641.

In order for the law to be clearly established it is
not necessary that the very action in question was previously
held unlawful.  <u>Id</u>. at 640.  Rather, "[s]ome but not precise
factual correspondence to precedent is necessary for the
defendant to be charged with knowledge of the unlawfulness of
his or her action."  *Good v. Dauphin County Social Services
for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989)
(quoting *Stoneking v. Bradford Area School District*, 882 F.2d
720, 726 (3d Cir. 1989)).

The key to the application of the qualified immunity
analysis is determining the state of the law at the time the
defendant acted.

> On summary judgment, the judge appropriately may
> determine, not only the currently applicable law,
> but whether that law was clearly established at
> the time an action occurred.  If the law at that
> time was not clearly established, an official
> could not reasonably be expected to anticipate
> subsequent legal developments, nor could he
> fairly be said to "know" that the law forbade
> conduct not previously identified as unlawful.

*Harlow, supra*, 457 U.S. at 818.

The defendants contend that they are entitled to
qualified immunity.

10

"The threshold inquiry a court must undertake in a
qualified immunity analysis is whether plaintiff's
allegations, if true, establish a constitutional violation."
*Hope v. Pelzer,* 122 S.Ct. 2508, 2513 (2002).  Despite their
participation in constitutionally impermissible conduct,
government officials "may nevertheless be shielded from
liability for civil damages if their actions did not violate
'clearly established statutory or constitutional rights of
which a reasonable person would have known.'" *Id.* at 2515
(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
Qualified immunity operates to ensure that, before they are
subjected to suit, officers are on notice that their conduct
is unlawful. *Id.*  "If the law was clearly established, the
immunity defense ordinarily should fail, since a reasonably
competent public official should know the law governing his
conduct." *Harlow, supra*, 457 U.S. at 818-19.

"The 'chronic difficulty' in applying the test for
qualified immunity is defining the right at issue in a manner
that is neither too broad (thereby exposing officials to
numerous suits based on violations of abstract rights) nor
too narrow (thereby insulating nearly all discretionary
decisions from liability)." *Warren v. Keane*, 196 F.3d 330,

11

332 (2nd Cir. 1999).  In order for the law to be clearly established it is not necessary that the very action in question was previously held unlawful. *Hope, supra,* 122 S.Ct. at 2516.  Officials can still be on notice that their conduct violates established law even in novel situations. *Id.*  The salient question is whether the state of the law at the time gave the officials fair warning that their alleged conduct was unconstitutional. *Id.*

The defendants' qualified immunity argument is without merit.  Racial discrimination in the administration of prison assignments and in prison transfers is a constitutional violation. Retaliation against a prisoner for the prisoner's exercise of his right of access to the courts is a constitutional violation.  *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").  The defendants have not characterized the plaintiff's allegations in a manner fairly consistent with the plaintiff's statement of those allegations and also

consistent with the defendants' assertion of no violation of a clearly established right.

The defendants rely in presenting their motion to dismiss in part upon the principle of law that a prisoner has no right or legally enforceable expectation to be assigned to or to remain at any particular prisoner.  "It is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002).  An inmate does not have a due process right to remain in or be transferred to any particular prison.  *See Olim v. Wakinekona*, 461 U.S. 238 (1983). However, here the plaintiff has claimed that he was transferred for exercising his constitutional right of accessing the courts.  A transfer in retaliation for the exercise of a constitutional right is an actionable constitutional violation.

The defendants argue that the plaintiff's claim of a conspiracy to have him transferred to another institution in retaliation for his involvement in civil actions is not supported by facts bearing out the existence of a conspiracy.

We consider the material question to be whether the personal involvement of each defendant is adequately alleged.

Retaliation for the exercise of First Amendment rights is a constitutional violation.

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001). Next, a prisoner-plaintiff must show that he suffered some "adverse action" at the hand of prison officials. *Id.* "[A] prisoner-plaintiff satisfies this requirement by demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

"Once these two threshold criteria are met, there remains the question of how a prisoner-plaintiff must go about proving a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Id.* "In a First Amendment retaliation case, the

14

plaintiff has the initial burden of showing that his constitutionally protected conduct was a "substantial" or "motivating factor" in the relevant decision." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *Rauser, supra*, 241 F.3d at 333-34.  "Once the plaintiff carries this burden, the burden shifts to the defendant to show 'by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.'" *Suppan, supra,* 203 F.3d at 235 (quoting *Mount Healthy, supra*, 429 U.S. at 287); *Rauser, supra*, 241 F.3d at 333-34.  Prison officials may prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser, supra*, 241 F.3d at 334.

"A prisoner has a First Amendment right to file grievances against prison officials." *Scott v. Churchill*, No. 97-2061, 2000 WL 519148 at * 2 (6th Cir. Apr. 6, 2000); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)(holding that the filing of disciplinary charges against a prisoner is actionable under 42 U.S.C. § 1983 if done in retaliation for prisoner filing a grievance pursuant to established procedures).

The plaintiff's claim, we note, is not only that the transfer was in retaliation for past litigation, but also that its purpose is to inconvenience and to deter him as to current and future litigations.

The broad objectives of the alleged conspiracy - to retaliate and to deter - are adequately stated in the second amended complaint.  As noted above, all material factual allegations must be construed in the light most favorable to the plaintiff for purposes of the motion to dismiss or a plan to subject the plaintiff to a retaliatory transfer is another question.

The roles allegedly played by each defendant - Jake Mendez, Richard Matlack and R.L. Wolever - in a conspiracy facts demonstrating each defendant's personal involvement are not adequately stated in the second amended complaint, the defendants argue.

The plaintiff alleges in the second amended complaint that defendants Matlack and Mendez threatened him and intimidated him constantly for doing too much legal work.  He alleges that his legal work was extensive and caused him to

16

place extensive demands on his unit team.  His unit team told him that defendant Matlack wanted to get rid of him.  He alleges that defendant Matlack signed a progress report containing false statements; however, the materiality of that progress report to the retaliation claim(s) is not stated.

Construing the complaint in the light most favorable to the plaintiff, the plaintiff does with adequate specificity state the role played by defendants Matlack and Mendez in a plan and conduct to violate the plaintiff's right to be free from retaliation for the exercise of First Amendment rights. We agree with the defendants that the complaint should be dismissed as to defendant Wolever as to the claim(s) of participation in a plan to transfer the plaintiff for the exercise of the right of access to the court.

The defendants argue that the plaintiff in the second amended complaint fails to state a claim upon which relief can be granted of discrimination on the basis of race.

The plaintiff's second amended complaint alleges that he "is the only African-American inmate, with no disciplinary reports, from the New York region that was transferred out of

his region while in the midst of ongoing litigation in the
Southern District of New York and the Middle District of
Pennsylvania.  No Caucasian or Hispanic inmates were
subjected to the same standard, *i.e.*, transfer to U.S.P. Lee,
as [plaintiff].").  The allegation encompasses implications
of racial discrimination and retaliation for the exercise of
First Amendment rights.  The allegation does fail to state a
claim of discrimination based upon race upon which relief can
be granted because the essential comparison made by the
plaintiff is with other African American inmates.  He can not
reasonably be seen to have made a colorably valid claim of
racial discrimination when he is contrasting his treatment as
an African American inmate to the treatment of other African
American inmates.  In the second quoted sentence, he
contrasts his treatment to the treatment of the population of
Caucasian and Hispanic inmates.  However, this population is
not qualified by the plaintiff in the same manner as the
population of other African American inmates from whom the
plaintiff distinguishes himself in the first sentence; *i.e.*,
African American inmates who have no disciplinary reports,
who are from the New York region, and who were transferred
out of their region while in the midst of ongoing litigation
in the Southern District of New York and the Middle District

18

of Pennsylvania.  Therefore, the plaintiff has distinguished his treatment as to institutional assignment from all Caucasian and Hispanic inmates and from a narrow population of African American inmates.

The complaint should be dismissed as to all defendants as to the claim(s) of a racially discriminatory transfer.

Warden Mendez argues that the second amended complaint should be dismissed as to him because the complaint seeks to hold him liable on the basis of a *respondeat superior* theory and because, in the absence of an allegation of personal involvement on his part in a violation of the plaintiff's constitutional rights, he may not be held liable under a 42 U.S.C. § 1983 or a *Bivens* theory of liability.

"Liability may not be imposed under § 1983 on the principle of *respondeat superior.*" *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995).  Liability under 42 U.S.C. §1983 may be based only upon a defendant's personal involvement in conduct amounting to a constitutional violation.  *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).  The principle that *respondeat*

*superior* liability does not exist under 42 U.S.C. § 1983 extends even to a for-profit private corporation.  *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003)("PHS [Prison Health Services] cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.")

The plaintiff's second amended complaint relates the plaintiff's involvement in habeas corpus litigation in the United States District Court for the Middle District of Pennsylvania and in a civil action in the United States District Court for the Southern District of New York.  It relates that the plaintiff was under threat and intimidation from Case Manager Richard Matlack, Warden Mendez and Allenwood staff for doing too much legal work.  It alleges that Warden Mendez falsely justified the plaintiff's transfer by stating that the justification for it was "population decrease."  It alleges that defendant Mendez knew that the plaintiff had imminent court deadlines and had non-frivolous legal claims and that defendant Mendez retaliated against the plaintiff for addressing his claims.

The alleged facts are adequate for purposes of the pending motion to allege personal involvement on the part of defendant Mendez, since the complaint considered in the light most favorable to the plaintiff, the non-moving party, may be construed to allege that the defendants in selecting inmates to move to a new prison from the Allenwood prison population included the plaintiff to retaliate against him for litigation activities.

For the foregoing reasons, it is recommended that the motion to dismiss the complaint be denied as to the claim of the plaintiff that defendants Mendez and Matlack caused the plaintiff to be transferred to another prison in retaliation for the exercise by the plaintiff of his right of access to the court.  It is recommended that the defendants' motion to dismiss the complaint otherwise be granted.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   September 9, 2005.